**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000051
23-DEC-2019
08:05 AM**

NO. CAAP-19-0000051

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

CH, Plaintiff-Appellant, v.
JH, Defendant-Appellee

APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(FC-D NO. 17-1-0249K)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, and Leonard and Wadsworth, JJ.)

This appeal arises out of divorce proceedings between Plaintiff-Appellant CH (**Husband**), *pro se*, and Defendant-Appellee JH (**Wife**). Husband appeals from three orders entered by the Family Court of the Third Circuit (**Family Court**): (1) the July 16, 2018 Order Denying Plaintiff's Motion for Default (**Order Denying Default**); (2) the July 16, 2018 Order re: Jurisdiction (**Child Custody Order**);[1] and (3) the February 5, 2019 Order Granting Defendant's Motion to Dismiss Divorce Filed December 26, 2018 (**Dismissal Order**).[2]

Husband contends that the Family Court erred in: (1) denying his motion for entry of default; (2) declining to exercise jurisdiction, and ruling that the District Court of Lancaster County, Nebraska (**Nebraska Court**) would retain jurisdiction, over matters relating to custody and care of the couple's minor child (**Minor**) (**child custody matters**); and (3)

---

[1] The Honorable Peter Bresciani presided over proceedings regarding both the Order Denying Default and the Child Custody Order.

[2] The Honorable Wendy M. DeWeese presided.

dismissing Husband's complaint for divorce based on lack of jurisdiction, and ruling that his pending motion to compel discovery was therefore moot.[3]

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Husband's contentions as follows.[4]

**1. Denial of Motion for Default.** The Family Court did not abuse its discretion in denying Husband's motion for default.

---

[3] Husband's points of error have been summarized and rewritten for clarity. We note that his opening and reply briefs do not comply with Hawai'i Rules of Appellate Procedure (HRAP) Rule 28 in material respects. However:

> [T]he Hawai'i appellate courts have "consistently adhered to the policy of affording litigants the opportunity 'to have their cases heard on the merits, where possible.'" Morgan v. Planning Dep't, 104 Hawai'i 173, 180-81, 86 P.3d 982, 989-90 (2004) (quoting O'Connor v. Diocese of Honolulu, 77 Hawai'i 383, 386, 885 P.2d 361, 364 (1994)). Moreover, Hawai'i appellate courts generally are more forgiving of technical flaws in pro se parties' briefs. See, e.g., Wagner v. World Botanical Gardens, Inc., 126 Hawai'i 190, 193, 268 P.3d 443, 446 (App. 2011).

State v. Cormier, No. CAAP-13-0004623, 2015 WL 6126948, at *2 n.3 (Haw. App. Oct. 16, 2015). Here, Husband's arguments do not consistently cite to the relevant record and authorities. Although Wife points out Husband's failure to comply with HRAP Rule 28, she does not argue that Husband's failure prejudiced her. We therefore address his discernible arguments.

[4] Wife argues that we lack jurisdiction to review the Order Denying Default and the Child Custody Order because they were interlocutory, Husband took no steps to render the orders appealable, and, even if they were appealable, Husband failed to timely file notices of appeal. We reject this argument.

The Family Court did not enter a divorce decree in this case. Nevertheless, the February 5, 2019 Dismissal Order is a final order that terminates all four required parts of the proposed divorce. In particular, the Dismissal Order dismisses Husband's complaint for divorce against Wife by, in effect: (1) denying Husband's prayer to dissolve the marriage; (2) denying Husband's prayer to award child custody, visitation, and support; (3) denying Husband's prayer to adjudicate the issue of spousal support; and (4) denying Husband's prayer to divide and distribute their property and debts. See Eaton v. Eaton, 7 Haw. App. 111, 118-19, 748 P.2d 801, 805 (App. 1987). Therefore, the Dismissal Order is a final appealable order under Hawaii Revised Statutes (HRS) § 571-54 (2018). See Boulton v. Boulton, 69 Haw. 1, 730 P.2d 338 (1986), overruled on other grounds by Riethbrock v. Lange, 128 Hawai'i 1, 12, 282 P.3d 543, 554 (2012). "An appeal from a final judgment 'brings up for review all interlocutory orders not appealable directly as of right [that] deal with issues in the case.'" Ueoka v. Szymanski, 107 Hawai'i 386, 396, 114 P.3d 892, 902 (2005) (quoting Pioneer Mill Co. v. Ward, 34 Haw. 686, 694 (1938)). We thus have jurisdiction to review not only the Dismissal Order, but also the Order Denying Default and the Child Custody Order. See Eaton, 7 Haw. App. at 118-19, 748 P.2d at 805 (in a divorce case, a family court ruling on child custody is final and appealable under HRS § 571-54 only if the family court has previously or simultaneously decided the dissolution of the marriage).

See <u>Brutsch v. Brutsch</u>, 139 Hawai'i 373, 381, 390 P.3d 1260, 1268 (2017) (citing <u>Kakinami v. Kakinami</u>, 127 Hawai'i 126, 136, 276 P.3d 695, 705 (2012)). Under the circumstances, where Wife filed an answer to the complaint for divorce prior to the hearing of the motion, and also appeared at the hearing, it was well within the discretion of the Family Court to deny the motion.

**2. Jurisdiction Over Child Custody Matters.** On April 23, 2018, the Family Court held a joint hearing with the Honorable Jodi L. Nelson of the Nebraska Court to discuss jurisdiction over child custody matters (**the April 23, 2018 Hearing**).[5] The courts agreed that the Minor had no "home state" (<u>see</u> <u>infra</u>), the more appropriate forum for child custody matters was the Nebraska Court, and, therefore, the Nebraska Court should retain jurisdiction over child custody matters. The Family Court entered the Child Custody Order, which stated, among other things: (1) "[t]he Hawai'i Courts shall retain jurisdiction with regards to the Divorce action with the exception of custody and care of the minor child"; and (2) "[t]he District Court [o]f Lancaster County, Nebraska shall retain jurisdiction with regards to the custody and care of the parties['] minor child . . . ."

Husband argues that the Family Court erred in declining to exercise jurisdiction over child custody matters. We reject this argument.

The Uniform Child Custody Jurisdiction and Enforcement Act (**Uniform Act**) governs jurisdictional issues that arise in interstate child custody proceedings and is codified in HRS chapter 583A. HRS § 583A-101 (2018). <u>See</u> <u>NB v. GA</u>, 133 Hawai'i 436, 440, 329 P.3d 341, 345 (App. 2014). The Uniform Act was drafted by the National Conference of Commissioners on Uniform State Laws in 1997, and enacted by the Hawai'i Legislature in

---

[5] It appears that the Family Court may have communicated with the Nebraska Court pursuant to HRS § 583A-206(b), after Wife notified the Family Court that she had obtained an Ex Parte Order from the Nebraska Court, filed March 2, 2018, pursuant to a Complaint for Emergency Child Custody.

2002.[6] 2002 Haw. Sess. Laws Act 124, §§ 1 & 2 at 335-48. <u>See</u> <u>NB v. GA</u>, 133 Hawaiʻi at 440, 329 P.3d at 345.

Under HRS § 583A-201(a), the Family Court has jurisdiction to make an initial child-custody determination only if:

> (1)  This State is the home state of the child on the date of the commencement of the proceeding,[7] or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this State but a parent or person acting as a parent continues to live in this State;
>
> (2)  A court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under section 583A-207 or 583A-208, and;
>
> > (A)  The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and
> >
> > (B)  Substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships;
>
> (3)  All courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child under section 583A-207 or 583A-208; or
>
> (4)  No court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3).

HRS § 583A-201(a) (2018) (footnote added).

> The Uniform Act defines "home state" as:
>
> the state in which a child lived with a parent or a person acting as a parent <u>for a period of at least six consecutive months immediately before the commencement of a child-custody proceeding</u>. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

---

[6]  Nebraska has also adopted the Uniform Act. <u>See</u> Neb. Rev. Stat. §§ 43-1226 - 43-1266; <u>In re Guardianship of S.T.</u>, 912 N.W.2d 262, 263-64 (Neb. 2018).

[7]  "'Child-custody proceeding' means a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue. The term includes <u>a proceeding for divorce</u>, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from domestic violence, <u>in which the issue may appear</u>. . . ." HRS § 583A-102 (2018) (emphasis added).

HRS § 583A-102 (2018) (emphasis added).

Here, based on the information provided by the parties, the Family Court correctly ruled that the Minor had no home state as of the April 23, 2018 Hearing. One month earlier, the parties had agreed to the following timeline of the Minor's places of residence:

| July 2014-July 2016: | Kailua-Kona, Hawai'i |
| July 2016-Nov. 2017: | Vietnam |
| Nov. 2017-current: | Lincoln, Nebraska |

Husband includes the same timeline in his opening brief on appeal. As Husband concedes, when he filed his complaint for divorce on December 11, 2017, the Minor was living in Nebraska (with Wife), but had not lived in Nebraska, Hawai'i or any other state for a period of six consecutive months before, or within six months of, that date. Accordingly, the Family Court did not have jurisdiction to make an initial child-custody determination under HRS § 583A-201(a)(1).

Having determined that the Minor had no home state, the courts proceeded to analyze the nine factors for determining an "inconvenient forum" under HRS § 583A-207 and the Nebraska equivalent, Neb. Rev. Stat. § 43-1244, as applicable.[8] Section 583A-207 provides:

> (a) A court of this State which has jurisdiction under this chapter to make a child-custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon the motion of a party, the court's own motion, or request of another court.
>
> (b) Before determining whether it is an inconvenient forum, a court of this State shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

---

[8] It appears that, in the absence of home state jurisdiction, the Family Court, the Nebraska Court or both assumed "significant connection" jurisdiction under HRS § 583A-201(a)(2) or the Nebraska equivalent, Neb. Rev. Stat. § 43-1238(a)(2), as a prelude to considering forum convenience factors. At any rate, the parties do not challenge — and on this record we find no error in — the Family Court's decision to consider these factors under section 583A-207. The Family Court also noted that Nebraska's statutory equivalent, Neb. Rev. Stat. § 43-1244, sets out the same factors.

(1)     Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2)     The length of time the child has resided outside this State;

(3)     The distance between the court in this State and the court in the state that would assume jurisdiction;

(4)     The relative financial circumstances of the parties;

(5)     Any agreement of the parties as to which state should assume jurisdiction;

(6)     The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

(7)     The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence;

(8)     The familiarity of the court of each state with the facts and issues in the pending litigation; and

(9)     The physical and psychological health of the parties.

(c) If a court of this State determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child-custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper.

(d) A court of this State may decline to exercise its jurisdiction under this chapter if a child-custody determination is incidental to an action for divorce or another proceeding, while still retaining jurisdiction over the divorce or other proceeding.

HRS § 583A-207 (2018).

The courts agreed that factors (1), (2), (4), (6), and (8) weighed in favor of the Nebraska Court exercising jurisdiction, while factors (3), (7), and (9) were neutral. Regarding factor (2), for example, the courts agreed that the Minor had not resided in Hawaiʻi since July 2016, and was living in Nebraska under a plan to go forward there at the time of the April 23, 2018 Hearing. On this record, we cannot find that the Family Court's findings were clearly erroneous, or that the Family Court abused its discretion in declining jurisdiction over child custody matters. See NB, 133 Hawaiʻi at 444, 329 P.3d at 349 ("A family court's decision to decline jurisdiction is

reviewed for abuse of discretion." (citing <u>Fisher v. Fisher</u>, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006))).

**3.  Jurisdiction Over Remaining Divorce Matters.**  On February 5, 2019, the Family Court granted Wife's motion to dismiss Husband's complaint for divorce on the ground that, by then, "neither party resides in the State of Hawai'i[;] therefore, [the Family Court] does not have jurisdiction over the parties to enter a Decree of Dissolution, pursuant to HRS [§] 580-1(b) and <u>Puckett v. Pucket</u>, 94 Haw[ai'i] 471, 16 P.3d 876 ([App.] 2000)[.]"  In its March 1, 2019 Findings of Fact, Conclusions of Law Re Defendant's Motion to Dismiss Divorce (**FOFs/COLs**), COL 5, the Family Court found that Husband "relocated to Nebraska in August 2018 and was no longer physically present in the State of Hawaii from that point on." The court reasoned that, because Husband was physically present and domiciled in Nebraska and not Hawai'i, "this Court cannot make the substantive findings required by [HRS §] 580-1."

Husband contends, and we conclude, that the Family Court erred in dismissing Husband's complaint for divorce on this basis.

"The jurisdiction of the family court is reviewed <u>de novo</u> under the right/wrong standard."  <u>Hsieh v. Sun</u>, 137 Hawai'i 90, 98, 365 P.3d 1019, 1027 (App. 2016) (citing <u>Puckett</u>, 94 Hawai'i at 477, 16 P.3d at 882).  HRS § 580-1(a) (2018) provides in relevant part:

> Exclusive original jurisdiction in matters of . . . divorce, . . . ., subject to section 603-37 as to change of venue, and subject also to appeal according to law, is conferred upon the family court of the circuit in which the applicant has been domiciled or has been physically present for a continuous period of at least three months next preceding the application therefor[.] . . .  No absolute divorce from the bond of matrimony shall be granted for any cause unless either party to the marriage has been domiciled or has been physically present in the State for a continuous period of at least six months next preceding the application therefor[.]

By its plain language, HRS § 580-1(a) requires that either party to the marriage be "domiciled" or "physically present" in the State of Hawai'i for at least six months preceding the <u>application</u> for divorce in order for the family court to grant a divorce.  In this context, the application is

synonymous with the complaint for divorce. See HRS § 580-2 (2018) (an action for divorce "is commenced by filing a complaint with the court"); Krentler v. Krentler, No. CAAP-16-0000105, 2019 WL 4678143, at ***2 (Haw. App. Sept. 25, 2019) (SDO) ("Because Husband was physically present in Hawaiʻi for at least six months preceding the filing of his complaint for divorce, the Family court was right when it concluded that it had subject matter jurisdiction over the proceeding."); see also Whitehead v. Whitehead, 53 Haw. 302, 305, 492 P.2d 939, 941 (1972) ("Hawaii is not alone in denying divorce to an applicant who has not been domiciled or has not been physically present in the state for a prescribed period before bringing the divorce action." (emphasis added)). Accordingly, section 580-1(a) requires that a party to the marriage be domiciled or physically present in Hawaiʻi for at least six months preceding the filing of the complaint for divorce. When this durational requirement is met, section 580-1 does not by its terms impose any additional requirement that either party remain in Hawaiʻi while the action is pending or until entry of the divorce decree.

Here, the record indicates that Husband was physically present (and possibly domiciled) in Hawaiʻi for a continuous period of at least six months when he filed his complaint for divorce on December 11, 2017. He alleged so in his complaint, and in March 2018, Wife represented to the Nebraska Court that Husband had been in Hawaiʻi since May 2017. The Family Court presumably retained jurisdiction over the divorce action, with the exception of child custody matters, on this basis at the April 23, 2018 Hearing.[9] Accordingly, Husband met section 580-1's durational requirement for obtaining a divorce.

Puckett does not change this result. There, this court ruled that the family court had subject matter jurisdiction to enter a divorce decree, where the wife was domiciled in Hawaiʻi at the time she filed a divorce complaint and for a continuous period of six months prior to entry of the divorce decree. The

---

[9] Additionally, the Family Court found in FOF 12: "H[usband] further states that at the time he filed his Complaint for Divorce he had been living in Hawaii since May 16, 2017, about seven months."

husband had argued that the family court lacked jurisdiction to entertain the case because the wife had <u>not</u> been domiciled in Hawaiʻi for a continuous period of six months prior to filing the divorce complaint.  Relying on <u>Whitehead</u>, 53 Haw. at 315, 492 P.2d at 947, this court disagreed:

> In <u>Whitehead</u>, the Hawaiʻi Supreme Court held that the six-month domiciliary or physical presence requirement for divorce in the second sentence of HRS § 580-1 is jurisdictional in the sense that a court cannot enter a divorce decree in the absence of proof of domicile for the necessary length of time.  However, the requirement does not deprive the family court of subject matter jurisdiction to hear and act on a case[.]

<u>Puckett</u>, 94 Hawaiʻi at 483, 16 P.3d at 888 (internal citation omitted).  This court concluded that as long as the wife was domiciled in Hawaiʻi when she filed for divorce, the family court had subject matter jurisdiction to entertain the action, and the wife could meet the durational requirements for a divorce decree based on her domicile in Hawaiʻi prior to entry of the decree.

Here, the record indicates that Husband, unlike the wife in <u>Puckett</u>, was physically present in Hawaiʻi for a continuous period of six months prior to filing his complaint for divorce.  He therefore met section 580-1's durational requirements for the entry of a divorce decree.  Nothing in <u>Puckett</u> imposed any additional requirement that he remain in Hawaiʻi while the divorce action was pending.  Accordingly, the Family Court erred in: (1) dismissing Husband's complaint for divorce on the ground that he was no longer physically present or domiciled in Hawaiʻi; and (2) ruling that Husband's motion to compel was therefore moot.

In light of the above, we conclude that the following conclusions of law and ultimate conclusion in the Family Court's March 1, 2019 FOFs/COLs are also wrong:

CONCLUSIONS OF LAW

. . . .

> 5.    After spending approximately seven months in Hawaii, [Husband] relocated to Nebraska in August 2018 and was no longer physically present in the State of Hawaii from that point on.[10/]

---

[10/]    The first part of COL 5 – "After spending approximately seven months in Hawaii, [Husband] relocated to Nebraska" – is a clearly erroneous factual finding.  Based on FOF 12, Husband had been living in Hawaiʻi for

9

. . . .

> 10. As such this court cannot make the substantive findings required by Hawaii Revised Statutes Section 580-1.
>
> Therefore, based on the Foregoing Findings of Fact and Conclusions of Law, the Court orders that Defendant's Motion to Dismiss is GRANTED.

(Footnote added.)

**4. Conclusion.** For these reasons, we: (1) affirm the July 16, 2018 Order Denying Default and the July 16, 2018 Child Custody Order; and (2) vacate the February 5, 2019 Dismissal Order. The case is remanded to the Family Court for further proceedings consistent with this Summary Disposition Order.[11/]

DATED: Honolulu, Hawai'i, December 23, 2019.


On the briefs:

CH,
Pro Se Defendant-Appellant.

Christopher J. Eggert
(Eggert & Associates LLC)
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

---

about seven months when he filed his complaint for divorce in December 2017. It was another eight months after that, in August 2018, when he relocated to Nebraska.

[11/] The proceedings on remand may also depend upon, or be affected by, any further relevant proceedings that may have occurred in Nebraska.